No. 13-2452

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**BLUE WATER BALTIMORE,**

*Intervenor/Plaintiff-Appellant,*

v.

**MAYOR AND CITY COUNCIL OF BALTIMORE, MARYLAND,**

*Defendants-Appellees,*

**UNITED STATES; STATE OF MARYLAND,**

*Plaintiffs-Appellees.*

On Appeal From The United States District Court
For The District of Maryland (J. Frederick Motz, District Judge)

**BRIEF OF INTERVENOR/PLAINTIFF-APPELLANT**

Theodore L. Garrett
Thomas R. Brugato
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 662-5398
tgarrett@cov.com

*Counsel for Intervenor/Plaintiff-Appellant Blue Water Baltimore*

February 24, 2014

## <u>CORPORATE DISCLOSURE STATEMENT</u>

The following is Blue Water Baltimore's Corporate Disclosure Statement pursuant to Rule 26.1 and Local Rule 26.1:

Blue Water Baltimore does not have any parent corporation. No publicly held corporation owns 10% or more of Blue Water Baltimore's stock.

No publicly held corporation has a direct financial interest in the outcome of the litigation by reason of a franchise, lease, other profit sharing agreement, insurance, or indemnity agreement.

Blue Water Baltimore is not a trade association.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ...................................... i

TABLE OF CONTENTS .................................................... ii

TABLE OF AUTHORITIES ............................................... iii

JURISDICTIONAL STATEMENT ......................................... 1

STATEMENT OF THE ISSUES ........................................... 2

STATEMENT OF THE CASE ............................................. 2

SUMMARY OF ARGUMENT ............................................. 5

ARGUMENT ............................................................. 8

    I.    **Blue Water Baltimore Has an Unconditional Statutory Right to Intervene Under the Clean Water Act.** ............................. 8

    II.    **Blue Water Baltimore's Motion to Intervene Was Timely.** ......... 10

        A.    **Blue Water Baltimore Had Good Reason For the Timing of Its Motion to Intervene.** ................................. 11

            1.    *Lack of Enforcement of the Consent Decree.* ............... 12

            2.    *The Parties Will Likely Seek to Modify the Consent Decree.* ......................................................... 17

        B.    **The Parties Will Suffer No Prejudice From Blue Water Baltimore's Intervention.** ........................... 19

        C.    **Post-Judgment Intervention Is Permissible.** ...................... 20

III.    **Intervention Is Proper Even Though the Consent Decree Is Final.** ...... 20

IV.    **Blue Water Baltimore Has Standing to Intervene.** ................................. 22

CONCLUSION ........................................................... 25

REQUEST FOR ORAL ARGUMENT ................................... 26

ADDENDUM OF RELEVANT STATUTORY PROVISIONS .................... A-1

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alberti v. Klevenhagen*, 46 F.3d 1347 (5th Cir. 1995) ........................................1, 21

*Am. Canoe Ass'n, Inc. v. Murphy Farms, Inc.*,
   326 F.3d 505 (4th Cir. 2003) ...............................................................22

*Bridges v. Dep't of Md. State Police*, 441 F.3d 197 (4th Cir. 2006)........................1

*Brink v. DaLesio*, 667 F.2d 420 (4th Cir. 1982) .......................................................10

*Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*,
   629 F.3d 387 (4th Cir. 2011) ...............................................................24

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
   528 U.S. 167 (2000).......................................................................22, 23

*Gould v. Alleco, Inc.*, 883 F.2d 281 (4th Cir. 1989) ................................................10

*Hook v. Ariz. Dep't of Corr.*, 972 F.3d 1012 (9th Cir. 1992) .............................1, 21

*In re Pearson*, 990 F.2d 653 (1st Cir. 1993)........................................................1, 22

*Johnson v. Robinson*, 987 F.2d 1043 (4th Cir. 1993) .........................................1, 21

*Laber v. Harvey*, 438 F.3d 404 (4th Cir. 2006) ....................................................6, 10

*Ohio Valley Envtl. Coal. v. Aracoma Coal Co.*,
   556 F.3d 177 (4th Cir. 2009) ...............................................................24

*Patterson v. Shumate*, 912 F.2d 463 (4th Cir. 1990) (per curiam) ........................20

*Scardelletti v. Debarr*, 265 F.3d 195 (4th Cir. 2002) ..............................................8

*Sierra Club v. Espy*, 18 F.3d 1202 (5th Cir. 1994)..................................................20

*Sierra Club v. Hamilton County Bd. of Cnty. Comm'rs*,
   504 F.3d 634 (6th Cir. 2007) ...............................................................20

*Sierra Club v. Morton*, 405 U.S. 727 (1972) ..........................................................23

*Stuart v. Huff*, 706 F.3d 345 (4th Cir. 2013)...............................................8

*Thompson v. U.S. Dep't of Hous. & Urban Dev.*,
    404 F.3d 821 (4th Cir. 2005) ...............................................1, 21

*United States v. Albert Inv. Co.*, 585 F.3d 1386 (10th Cir. 2009) ...........................18

*United States v. Arch Coal, Inc.*, No. 11-0133, 2011 U.S. Dist. LEXIS
    66789 (S.D. W. Va. June 22, 2011)...............................................22

*United States v. City of Baton Rouge*, No. 01-978, 2012 U.S. Dist.
    LEXIS 55671 (M.D. La. Apr. 20, 2012) ...............................................9, 11, 17

*United States v. Metro. St. Louis Sewer Dist.*,
    833 F.2d 54 (8th Cir. 1989) ...............................................9

*United States v. Mississippi*, 958 F.2d 112 (5th Cir. 1992) ...............................................9

*United States v. Swift & Co.*, 286 U.S. 106 (1932)...............................................1, 21

*Utah v. Kennecott Corp.*, 232 F.R.D. 392 (D. Utah 2005) ...............................................19

**Statutes**

28 U.S.C. § 1291 ...............................................2

28 U.S.C. § 1331 ...............................................1

28 U.S.C. § 1345 ...............................................1

28 U.S.C. § 1355 ...............................................1

33 U.S.C. § 1319(b) ...............................................1

33 U.S.C. § 1362(5) ...............................................9

33 U.S.C. § 1365(b) ...............................................6, 8, 9

33 U.S.C. § 1365(g) ...............................................9

**Other Authorities**

28 C.F.R. § 50.7(b) ...............................................................18

Fed. R. App. P. 4(a) ...............................................................1

Fed. R. App. P. 34(a) ............................................................26

Fed. R. Civ. P. 24(a).....................................................5, 10, 22

Fed. R. Civ. P. 24(b) .............................................................10

Fed. R. Civ. P. 24(c)............................................................5, 6

Wright & Miller, *Federal Practice & Procedure* § 1908 (3d ed. 2013) ................22

## JURISDICTIONAL STATEMENT

The District Court had jurisdiction over the subject matter of the action pursuant to 33 U.S.C. § 1319(b) and 28 U.S.C. §§ 1331, 1345, and 1355.[1]  This appeal follows a final judgment of the District Court denying Intervenor/Plaintiff-Appellant Blue Water Baltimore's motion to intervene on October 1, 2013. *See Bridges v. Dep't of Md. State Police*, 441 F.3d 197, 207 (4th Cir. 2006) (the denial of a motion to intervene is an appealable final order).  Blue Water Baltimore timely filed its Notice of Appeal on November 27, 2013.  *See* Fed. R. App. P.

---

[1] The District Court also had jurisdiction to consider the motion to intervene.  The Consent Decree itself provides:

> This Court shall retain jurisdiction of this matter for the purposes of implementing and enforcing the terms and conditions of this Consent Decree and for the purpose of adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree, to the extent that this Consent Decree provides for resolution of disputes by the Court.

J.A. 84, ¶ 40.

Further, the District Court retains inherent authority to enforce the terms of the decree, and to modify the decree, regardless of the language of the decree.  The Supreme Court and this Court have rejected the argument "that a decree entered upon consent is to be treated as a contract and not as a judicial act," and instead held that courts have "inherent power to modify . . . consent decrees," because such decrees "regulate future conduct and thus operate as injunctions."  *Thompson v. U.S. Dep't of Hous. & Urban Dev.*, 404 F.3d 821, 825-26 (4th Cir. 2005) (citing *United States v. Swift & Co.*, 286 U.S. 106, 114-15 (1932)); *Johnson v. Robinson*, 987 F.2d 1043, 1050 (4th Cir. 1993) ("[A] district court may, of course, modify a consent decree to impose new duties upon a party . . . .").  Likewise, "[a] district court retains jurisdiction to enforce its judgments, including consent decrees."  *Thompson*, 404 F.3d at 833 (quoting *Hook v. Ariz. Dep't of Corr.*, 972 F.3d 1012, 1014 (9th Cir. 1992)).  It is well-settled that "[t]he entry of a consent decree does not 'kill' a case or terminate the district court's jurisdiction."  *Alberti v. Klevenhagen*, 46 F.3d 1347, 1365 (5th Cir. 1995) (quoting *In re Pearson*, 990 F.2d 653, 657 (1st Cir. 1993)).

1

4(a)(1)(B).  This Court has jurisdiction over this appeal pursuant to 28 U.S.C.

§ 1291.

## STATEMENT OF THE ISSUES

The sole issue presented is whether the District Court abused its discretion in

denying Blue Water Baltimore's motion to intervene, where (1) Blue Water

Baltimore has a statutory right to intervene under the Clean Water Act ("CWA"),

(2) the District Court retained jurisdiction to enforce the Consent Decree, (3) Blue

Water Baltimore submitted evidence of a number of substantial, unremedied

violations of the Consent Decree, and (4) Blue Water Baltimore had reason to

believe that modification of the Consent Decree, which would require judicial

approval, was imminent.

## STATEMENT OF THE CASE

**The Underlying Lawsuit and Consent Decree**

In April 2002, the United States and the State of Maryland brought suit

against the Mayor and City Council of Baltimore (the "City") in the District of

Maryland, alleging "hundreds of discharges of untreated wastewater containing

raw sewage" from the City's sewage system, "which were not discharged through

a permitted outfall and were not authorized under any NPDES permit issued to

Baltimore City."  J.A. 8, ¶ 42.  The complaint outlined a number of instances of

unpermitted sewage discharges, and concluded that between January 1996 and

2

2002 "at least 110 million gallons of wastewater containing raw sewage have been illegally discharged from Baltimore City's separate sanitary sewer system." J.A. 10, ¶ 46(D). The complaint alleged violations of the CWA and state law and requested an injunction directing the City to come into "permanent, consistent" compliance with the CWA. J.A. 19.

The same day the complaint was filed, a proposed Consent Decree was lodged with the District Court, which approved the Consent Decree on September 30, 2002. The Consent Decree was designed to require Baltimore to "eliminate" all "Sanitary Sewer Overflows" and "all Combined Sewer Overflow discharges" through the implementation of remedial measures specified in the decree. J.A. 33, ¶ 8.A. To that end, the Consent Decree outlined a number of steps the City would be required to take, including construction projects, inspection and maintenance obligations, and reporting of discharge events. J.A. 33-71, ¶¶ 8-17.

The Consent Decree also contained two requirements relevant to any ongoing violations of and proposed modifications to the decree. First, the Consent Decree provides that any modification must be "in writing and filed with the Court before it will be deemed effective . . . . Nothing in this Consent Decree shall be interpreted as modifying the scope and standard of review that the Court will exercise in reviewing a petition for modification." J.A. 93, ¶ 69. Second, the District Court "retain[ed] jurisdiction of this matter for the purposes of

3

implementing and enforcing the terms and conditions of this Consent Decree."

J.A. 84, ¶ 40.

**Blue Water Baltimore**

The mission of Blue Water Baltimore is to restore the quality of Baltimore's rivers, streams and harbor to foster a healthy environment, a strong economy, and thriving communities. J.A. 136, ¶ 5. Blue Water Baltimore is a Maryland nonprofit corporation formed in 2010 as a result of a merger between five separate Baltimore organizations involved in water quality issues. *Id.* ¶¶ 3-4. Blue Water Baltimore has expressed concerns with the City's sewage discharges since its formation in 2010, and its predecessors have been involved with these issues since at least 2008. J.A. 136-37, ¶¶ 6, 12.

In November 2012, Blue Water Baltimore met with EPA to discuss the City of Baltimore's lack of compliance with the Consent Decree. At this meeting, Blue Water Baltimore provided documentation of six specific, substantial sewage overflows and incidents. EPA informed Blue Water Baltimore at this time that it was negotiating with the City of Baltimore regarding revisions to the Consent Decree. In February 2013, Blue Water Baltimore sent a letter to EPA, the Maryland Department of the Environment ("MDE"), and the City again documenting specific, serious examples of noncompliance with the Consent Decree. J.A. 151. Negotiations between EPA and the City over possible

4

modifications to the Consent Decree were widely publicized in a May 30, 2013, local newspaper article. Those negotiations remain ongoing.

**The Motion to Intervene and the District Court's Ruling**

Based on these developments, Blue Water Baltimore filed a motion to intervene with the District Court on July 31, 2013. J.A. 118. This motion was opposed by Plaintiffs and the City. Despite extensive briefing by all parties regarding the motion, the District Court curtly denied the motion without a hearing, ruling in a terse "Memo to Counsel" as follows:

> The motion (document 5) is denied. I am satisfied that an effort to intervene in a case in which a consent decree has been filed for over eleven years is untimely. Moreover, the entry of the consent decree is a final judgment and there simply is no pending case at this time. In the event that modifications to the consent decree are proposed, Blue Water will be given an opportunity to express its views concerning the proposed modifications. Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

J.A. 363. This timely appeal followed.

## SUMMARY OF ARGUMENT

A district court must permit intervention where three requirements are met: (1) the proposed intervenor "is given an unconditional right to intervene by federal statute," Fed. R. Civ. P. 24(a)(1), (2) the proposed intervenor submits a motion to intervene and a pleading setting forth the claim or defense for which intervention is sought, Fed. R. Civ. P. 24(c), and (3) the proposed intervenor's motion to intervene

is "timely." The proposed intervenor may also be required to demonstrate standing; this Court has not decided whether that is required.

Regarding the first two requirements, (1) there was no dispute before the District Court as to the existence of an unconditional statutory right to intervene "as a matter of right." *See* 33 U.S.C. § 1365(b)(1)(B),[2] and (2) Blue Water Baltimore also submitted a complaint in intervention to the District Court, J.A. 123, and no party argued to the District Court that Blue Water Baltimore failed to satisfy the requirements of Federal Rule of Civil Procedure 24(c).

The only requirement that that Plaintiffs and the City contended was not satisfied is the third requirement that the motion to intervene be "timely," and the District Court agreed with this contention.

However, Blue Water Baltimore's motion to intervene is timely for two basic reasons. First, Blue Water Baltimore seeks to intervene for purposes of ensuring adequate enforcement of the Consent Decree, not to challenge the terms of the Consent Decree. Second, Plaintiffs and the City are engaged in widely publicized negotiations over potential modifications to the Consent Decree. In

---

[2] No party argued before the District Court that this provision was inapplicable here, or that it does not confer an unconditional right to intervene. Accordingly, any such argument was waived. *See, e.g.*, *Laber v. Harvey*, 438 F.3d 404, 429 (4th Cir. 2006) ("In the absence of exceptional circumstances . . . nonjurisdictional arguments not made to the district court are waived on appeal.").

these circumstances, Blue Water Baltimore's motion is timely, as the grounds for intervention arose long after entry of the Consent Decree.

Further, neither the parties nor the District Court will suffer any prejudice from intervention, given that Blue Water Baltimore does not seek to challenge the existing Consent Decree. A finding that Blue Water Baltimore's motion was untimely, and that Blue Water Baltimore should have intervened before entry of the Consent Decree, would create an unnecessary burden for both the court and third parties, because it would require intervention before entry of a consent decree in order for third parties to preserve their right to challenge noncompliance with and insufficient enforcement of the decree.

For these reasons, Blue Water Baltimore's motion to intervene was timely and the District Court abused its discretion in finding the motion untimely.

The District Court's order also states that the entry of the consent decree "is a final judgment and there simply is no pending case at this time." J.A. 363. However, as discussed above the Consent Decree itself provides that the Court shall retain jurisdiction for purposes of enforcing the terms and conditions of the Consent Decree. J.A. 84, ¶ 40. Moreover, it is well-established that entry of a Consent Decree does not terminate a district court's jurisdiction over an action.

Finally, while the Fourth Circuit has not held that a proposed Plaintiff-Intervenor need demonstrate standing in order to intervene, Blue Water Baltimore

7

has in any event demonstrated standing here.[3]  Accordingly, all requirements for
Blue Water Baltimore to intervene were satisfied, and the District Court erred in
denying Blue Water Baltimore's motion to intervene.  The case should be
remanded to the District Court with instructions to grant Blue Water Baltimore's
motion to intervene.

## ARGUMENT

This Court reviews "the district court's denial of intervention for an abuse of
discretion."  *Scardelletti v. Debarr*, 265 F.3d 195, 202 (4th Cir. 2002); *see also
Stuart v. Huff*, 706 F.3d 345, 349-50 (4th Cir. 2013).  For the following reasons,
Blue Water Baltimore submits that the District Court's denial of intervention was
an abuse of discretion.

## I.    Blue Water Baltimore Has an Unconditional Statutory Right to Intervene Under the Clean Water Act.

The Clean Water Act provides that where the EPA Administrator or a State
has commenced and is diligently prosecuting a civil or criminal action in a court to
require compliance with the CWA, then "in any such action in a court of the
United States any citizen may intervene as matter of right."  33 U.S.C.
§ 1365(b)(1)(B).  The plain language of this provision confers an unconditional
statutory right to intervene, as a number of courts have held, and as the United

---

[3] *See* Section III, *infra*.

8

States has conceded in other cases. *See, e.g.*, *United States v. Metro. St. Louis Sewer Dist.*, 833 F.2d 54, 56 (8th Cir. 1989) (holding that this provision permits intervention "as a matter of right"); *United States v. City of Baton Rouge*, No. 01-978, 2012 U.S. Dist. LEXIS 55671, at *3 (M.D. La. Apr. 20, 2012) (noting that the United States conceded that this provision provides "a statutory unconditional right to intervene"); *see also United States v. Mississippi*, 958 F.2d 112, 115 (5th Cir. 1992) (noting that "[t]his statutory language clearly evinces the legislature's intent to provide for a mandatory right of intervention").[4]

Plaintiffs and the City did not dispute that Blue Water Baltimore has an unconditional statutory right to intervene under the CWA before the District Court. *See* Plaintiffs' Memorandum in Response to the Motion of Blue Water Baltimore for Leave to Intervene, at 6 (Rec. Doc. 17); Defendant Mayor & City Council of Baltimore's response to Motion for Leave to Intervene, at 4 (Rec. Doc. 18).

---

[4] It is beyond dispute that Blue Water Baltimore is a "citizen" within the meaning of § 1365(b)(1)(B).  The CWA defines a citizen as "a person or persons having an interest which is or may be adversely affected."  33 U.S.C. § 1365(g).  "Person," in turn, includes a "corporation."  33 U.S.C. § 1362(5).  Blue Water Baltimore is a corporation and so is a "person" within the meaning of the CWA.

Blue Water Baltimore's interest "may be adversely affected" by this suit, as was forth in Blue Water Baltimore's Complaint in Intervention and as was uncontested by the Plaintiffs and the City before the District Court.  Further, as is discussed more fully in connection with standing, below, Blue Water Baltimore's members have been directly impacted by unlawful discharges from the City's sewage system.

Rather, they argued that the District Court should not permit intervention for other reasons. Accordingly, any argument that Blue Water Baltimore does not have an unconditional statutory right to intervene is waived.[5]

## II. Blue Water Baltimore's Motion to Intervene Was Timely.

This Court has outlined has outlined three factors for a district court to consider in determining whether a motion to intervene is timely: "how far the suit has progressed, the prejudice which delay might cause other parties, and the reason for the tardiness in moving to intervene." *Gould v. Alleco, Inc.*, 883 F.2d 281, 286 (4th Cir. 1989). Here, each factor weighs in favor of finding intervention timely. Moreover, where intervention is "of right," as is the case here, "the timeliness requirement of Rule 24 should not be as strictly enforced as in a case where intervention is only permissive." *Brink v. DaLesio*, 667 F.2d 420, 428 (4th Cir. 1982).

In this case, each factor weighs in favor of finding intervention to be timely, and the District Court abused its discretion in concluding otherwise.

---

[5] *See, e.g.*, *Laber v. Harvey*, 438 F.3d 404, 429 (4th Cir. 2006) ("In the absence of exceptional circumstances . . . nonjurisdictional arguments not made to the district court are waived on appeal."). Because any argument that Blue Water Baltimore lacks an unconditional statutory right to intervene has been waived, Blue Water Baltimore will not reiterate its alternative arguments made before the District Court that intervention is appropriate as of right under Fed. R. Civ. P. 24(a)(2) and that intervention is appropriate under Fed. R. Civ. P. 24(b)(1)(B).

## A.  Blue Water Baltimore Had Good Reason For the Timing of Its Motion to Intervene.

This case is not like the vast majority of cases where a non-party seeks to intervene after judgment is entered.  Blue Water Baltimore does not seek to invalidate or otherwise upset the existing Consent Decree.  Rather, its motion to intervene is timely for two reasons.  First, much of Blue Water Baltimore's reason for intervening is due to Plaintiffs' failure to adequately enforce the Consent Decree.  Second, Plaintiffs and the City of Baltimore are engaged in widely publicized discussions over modifications to the Consent Decree.

The one district court to have assessed a motion to intervene in similar circumstances found that the motion was clearly timely:

> The critical distinction between this case and those relied upon by plaintiff USA is that the proposed intervenors are not seeking to intervene because they disagree with the terms of the original Consent Decree, or even with the first Consent Decree modification. It is apparent that the reason for seeking to intervene is because the parties are now proposing a significant modification of the Consent Decree, and because the intervenors perceive that the plaintiffs are not aggressively enforcing the existing Consent Decree and are permitting violation of the CWA to go unabated.

*City of Baton Rouge*, 2012 U.S. Dist. LEXIS 55671 at *6.  As set forth below, similar circumstances are present here, and so the District Court erred in finding the motion untimely.

11

1.    *Lack of Enforcement of the Consent Decree.*

The Consent Decree makes plain that strict compliance with both its provisions as well as the CWA is required.  *See* J.A. 33, ¶ 8(A) ("Baltimore shall comply at all times with the Clean Water Act and the regulations promulgated thereunder . . . ."); J.A. 87, ¶ 50 ("Baltimore shall remain solely responsible for any non-compliance with the terms of this Consent Decree, all applicable permits, the Clean Water Act and regulations promulgated under that Act.").[6]

Notwithstanding these unambiguous provisions of the Consent Decree, Blue Water Baltimore has documented clear and substantial noncompliance with the Consent Decree by the City.  Blue Water Baltimore seeks to intervene to ensure that these violations are adequately addressed.

First, the City has failed to eliminate two Sanitary Sewer Overflow (SSO) structures as required by the Consent Decree.  These structures discharge millions of gallons of sewage each year.  The Consent Decree requires the City of Baltimore to "eliminate Sanitary Sewer Overflows . . . through development and

---

[6] *See also* J.A. 87, ¶ 49 ("Nothing herein shall be construed as relieving Baltimore of the duty to comply with the Clean Water Act, the Maryland water pollution control laws, the regulations promulgated under those acts, and all applicable permits issued under those acts and regulations."); J.A. 89, ¶ 54 ("This Consent Decree in no way affects or relieves Baltimore of any responsibility to comply with any federal, state or local law or regulation."); *id.* ¶ 55 ("The Parties agree that Baltimore is responsible for achieving and maintaining complete compliance with all applicable federal and state laws, regulations, and permits, and that compliance with this Consent Decree shall be no defense to any actions commenced pursuant to said laws, regulations, or permits, except as otherwise expressly specified in the Consent Decree.").

implementation of the measures set forth in Paragraphs 8 through 15." J.A. 33,

¶ 8(A). Those measures include a requirement that the City "eliminate the . . .

Sanitary Sewer Overflow structures identified in Appendices A and C no later than

the milestone dates specified in Appendix D for the elimination of such structures."

*Id.* ¶ 8(B).

The City has failed to comply with the requirement to eliminate structures

67 and 72. Both are structures that discharge into the Jones Falls and were

identified as structures to be removed in Appendix C. J.A. 105. The City was

required to remove structure 67 by June 30, 2007, and structure 72 by June 30,

2008. J.A. 106.

However, the City has not removed these two structures. Instead, it has

submitted multiple requests to EPA for an extension of the deadline. Most

recently, in February 2011, the City requested an extension of the deadline to

remove structures 67 and 72 until June 29, 2019. *See* J.A. 349; *see also* J.A. 168.

However, EPA has neither approved the extension request nor assessed stipulated

penalties for failure to meet the deadline. J.A. 323, ¶ 14. In the meantime these

two structures, in particular structure 67, continue to discharge substantial volumes

of untreated sewage. *See id.* ¶ 12 (explaining that structure 67 "discharged

untreated sewage mixed with stormwater seven times during 2012 with an average

13

flow rate of 6.78 million gallons per day and a maximum flow rate of 13.53 million gallons per day"); *see also* J.A. 168.

Second, the City has substantially underreported the volume of sanitary sewer overflows ("SSOs"). The City is required to file a written report within five days of the time the City becomes aware of "any unauthorized discharge of wastewater" from the sewage system. J.A. 70, ¶ 17(A). Such a written report must contain a variety of information, including the "volume (estimate if unknown)" of the discharge. *Id.* ¶ 17(A)(ii).

Between October 28 and October 31, 2012, between 800,000 and one million gallons of sewage discharged from two Herring Run sewer stacks. J.A. 358-59, ¶ 15; *see also* J.A. 212. The City reported an estimate of 8,100 gallons of total sewage loss, which, spread across the duration of the overflow, is roughly equivalent to the flow rate from a standard drinking water fountain. J.A. 359-60; *see also* J.A. 212. Evidence collected by Blue Water Baltimore, including photo and video documentation and eyewitness statements, demonstrates that the volume was significantly greater than that reported by the City. J.A. 360, ¶ 19; *see also* J.A. 212. The City has not provided any correction of its inaccurate volume

14

estimates or any explanation as to how those estimates could be so far off the mark.[7]

Third, the City has responded inadequately to sewage overflows along the Jones Falls along a pedestrian pathway on Falls Road. While one instance of such a discharge took place during Hurricane Sandy, there are also more recent instances of such overflows which did not take place during the storm. For instance, in June 2013 an overflow took place and similar to the event during Hurricane Sandy, the City failed to rope off the area from the public and clean up the wastewater debris. *See* J.A. at 325. On June 11, the City reported that the wastewater debris had been cleaned up. *Id.* However, Blue Water Baltimore has documented that the site was in fact not adequately cleaned up on June 14 and again on June 19. *Id.* This pathway is used by the public for walking, running, and biking, and wastewater debris covered the path, presenting a public health issue. *Id.*

---

[7] Before the District Court, Plaintiffs dismissed this example as misplaced, given the strains that the City was under at the time due to Hurricane Sandy. However, the volume reporting obligation is not one that should have been impacted by Hurricane Sandy – neither the City nor Plaintiffs have explained why a hurricane event should lead to drastic underestimates of the overflow volume. Accurate volume estimates are needed to assess the City's compliance with the Consent Decree and to provide information to the public regarding sewage discharges. Moreover, if the volume exceeds 10,000 gallons, the City is required to notify additional officials and to conduct sampling. J.A. at 343, § 2.

This is a violation of the Consent Decree.  The City of Baltimore's Standard Operating Procedures require a thorough cleanup of an SSO site, including a removal of all debris.  *See* J.A. 347, § 4.  These procedures are a part of the City's Emergency Response Plan, which the Consent Decree required the City to draft and submit to Plaintiffs for approval.  J.A. 69, ¶ 16(C).  Upon approval, the Plan was "incorporated into, and . . . enforceable under, this Consent Decree."  *Id.*

Fourth, the City failed to post adequate signage or clean up wastewater debris during another non-Hurricane Sandy overflow event at Gwynns Falls in June 2013.  On June 6 and June 11, 2013, a Blue Water Baltimore volunteer observed and reported to the City overflow events at Gwynns Falls Park.  *See* J.A. 334-37.  This area was not cordoned off from the public.  *Id.*  This is a violation of the Consent Decree, as the Emergency Response Plan requires "[t]he SSO location and the surrounding area" to be "cordoned off from the public . . . with cones and/or yellow caution tape" due to health concerns if the public were to come into contact with such sewage.  J.A. 346, § 3.5.

These failures of enforcement establish that Blue Water Baltimore's motion is timely.  As was the case in *City of Baton Rouge*, "the need to intervene arises from the failure of the plaintiffs to enforce compliance with the terms of the Consent Decree, and the failure to bring enforcement actions against the

defendants for repeated violations of the Consent Decree." *City of Baton Rouge*, 2012 U.S. Dist. LEXIS 55671 at *4.

        2.    *The Parties Will Likely Seek to Modify the Consent Decree.*

Blue Water Baltimore's motion to intervene is also timely because the parties to the Consent Decree are likely to seek modification of the decree in the near future.  A May 30, 2013, local newspaper article widely publicized the ongoing negotiations between EPA, MDE, and the City of Baltimore regarding modification of the Consent Decree.[8]  Further, as discussed above, the City has requested an extension until 2019 of the deadline to remove structures 67 and 72, which has been pending for over two years.  Such a modification of the deadlines in the decree would require the District Court's approval.  J.A. 93, ¶ 69.

Blue Water Baltimore sought to intervene in order to be able to present its position regarding any proposed modifications, and to be able to suggest additional modifications that may be necessary to protect the public interest in eliminating unlawful sewage discharges in the City or to offset any weakening of the Consent Decree proposed by Plaintiffs or the City.

Permitting Blue Water Baltimore to intervene now, rather than after the proposed modifications are filed with the District Court, furthers the interest of

---

[8] EPA has confirmed these negotiations in meetings with Blue Water Baltimore. These discussions may well be on hold because of the pendency of this appeal, but Blue Water Baltimore understands that the issues remain pending.

judicial economy.  The regulations requiring a period for public comment on a

proposed consent decree require only 30 days between the proposal of a decree and

its entry by the court.  *See* 28 C.F.R. § 50.7(b) (providing that a "proposed

judgment" be lodged with the court "at least 30 days before the judgment is

entered by the court").  If intervention is delayed until a proposed modification has

actually been filed with the Court, it would almost certainly take longer than 30

days to intervene, raise any substantive objections to the modifications, and have

the court rule on such objections.

The District Court's order does state that in the event that modifications to

the consent decree are proposed, Blue Water will be given an opportunity to

express its views concerning the proposed modifications.  J.A. 33.  If the District

Court meant that Blue Water Baltimore would have an opportunity to seek

intervention after modifications are proposed, that is unsatisfactory for the reasons

noted above.  If the District Court meant that Blue Water could simply file

comments with EPA, that is no substitute for Blue Water's  intervention as a

party.[9]

---

[9] *See United States v. Albert Inv. Co.*, 585 F.3d 1386, 1398-99 (10th Cir. 2009)
("The notice-and-comment mechanism is not an adequate substitute for
intervention, contrary to the government's claims. . . .  [T]he government is free to
ignore the comments because the notice-and-comment mechanism is not statutorily
mandated. The district court may also disregard [the proposed intervenor's]
comments in the absence of any requirement to consider them or any appellate
review of the court's consideration of comments.  The failure to consider
(continued...)

### B.    The Parties Will Suffer No Prejudice From Blue Water Baltimore's Intervention.

In their briefing before the District Court, neither Plaintiffs nor the City identified any specific prejudice that they would suffer other than the expenditure of time and money in litigation – much of which could have been avoided by consenting to intervention.  Unlike other cases where intervention after the entry of a consent decree was found to be untimely, Blue Water Baltimore does not seek to intervene in order to request that the "Consent Decree be set aside as void."  *Utah v. Kennecott Corp.*, 232 F.R.D. 392, 394 (D. Utah 2005).  Instead, Blue Water Baltimore seeks to ensure that the Consent Decree is adequately enforced and that any proposed modifications are in the public interest.  No reliance interest would be adversely effected if Blue Water Baltimore were to intervene.

Further, adopting the position of the District Court would result in a greater and unnecessary expenditure of judicial and government resources in the long run. Under that approach, any citizen groups or other potentially interested parties would be required to intervene in the underlying litigation prior to entry of a consent decree merely to preserve their right to ensure adequate enforcement of the decree in the future – even if such groups had no objection to the terms of the

---

adequately an intervenor's objections, on the other hand, is subject to appellate review.").

decree itself.[10]  *Cf. Sierra Club v. Espy*, 18 F.3d 1202, 1206 (5th Cir. 1994)

("Courts should discourage premature intervention that wastes judicial

resources.").  The better rule would permit intervention after entry of the decree for

purposes of enforcing that decree, so long as the intervenor did not seek to

challenge or overturn any provisions of the decree itself.

### C.    Post-Judgment Intervention Is Permissible.

As to the first factor, "[a] motion for intervention is not necessarily untimely

merely because it was made after judgment was entered in the case.  The most

important consideration is whether the delay prejudiced the other parties."

*Patterson v. Shumate*, 912 F.2d 463, 463 (4th Cir. 1990) (per curiam).  Here, as

discussed above, there will be no prejudice to the other parties if Blue Water

Baltimore is permitted to intervene, and Blue Water Baltimore has valid reasons

for seeking to intervene at this time.

### III.    Intervention Is Proper Even Though the Consent Decree Is Final.

The District Court's order also based its ruling on the grounds that the "entry

of the consent decree is a final judgment and there simply is no pending case at this

time."  J.A. at 363.  However, as discussed above the Consent Decree itself

---

[10] It is clear that parties to the underlying litigation, even if not signatories to a consent decree, may request judicial enforcement of the decree.  *Sierra Club v. Hamilton County Bd. of Cnty. Comm'rs*, 504 F.3d 634, 644 (6th Cir. 2007) ("[A]lthough the Sierra Club was not a party to the consent decree, as an intervening party in the underlying litigation, it can inform the Court of unenforced violations of the Consent Decree and request that the Court enforce the terms of the decrees and this Court's Order." (quotation marks omitted)).

provides that the Court shall retain jurisdiction for purposes of enforcing the terms and conditions of the Consent Decree:

> This Court shall retain jurisdiction of this matter for the purposes of implementing and enforcing the terms and conditions of this Consent Decree and for the purpose of adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree, to the extent that this Consent Decree provides for resolution of disputes by the Court.

J.A. 84, ¶ 40.

Further, the District Court retains inherent authority to enforce the terms of the decree, and to modify the decree, regardless of the language of the decree. The Supreme Court and this Court have rejected the argument "that a decree entered upon consent is to be treated as a contract and not as a judicial act," and instead held that courts have "inherent power to modify . . . consent decrees," because such decrees "regulate future conduct and thus operate as injunctions." *Thompson v. U.S. Dep't of Hous. & Urban Dev.*, 404 F.3d 821, 825-26 (4th Cir. 2005) (citing *United States v. Swift & Co.*, 286 U.S. 106, 114-15 (1932)); *Johnson v. Robinson*, 987 F.2d 1043, 1050 (4th Cir. 1993) ("[A] district court may, of course, modify a consent decree to impose new duties upon a party . . . ."). Likewise, "[a] district court retains jurisdiction to enforce its judgments, including consent decrees." *Thompson*, 404 F.3d at 833 (quoting *Hook v. Ariz. Dep't of Corr.*, 972 F.3d 1012, 1014 (9th Cir. 1992)). It is well-settled that "[t]he entry of a consent decree does not 'kill' a case or terminate the district court's jurisdiction." *Alberti v.*

21

*Klevenhagen*, 46 F.3d 1347, 1365 (5th Cir. 1995) (quoting *In re Pearson*, 990 F.2d 653, 657 (1st Cir. 1993)).

Thus, the District Court committed clear error in basing its ruling on the proposition that the Consent Decree was a final judgment.

## IV.    Blue Water Baltimore Has Standing to Intervene.

Blue Water Baltimore has standing to intervene in this suit.[11]  "An association has standing to bring suit on behalf of its members when [1] its members would otherwise have standing to sue in their own right, [2] the interests at stake are germane to the organization's purpose, and [3] neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000).  Each requirement is satisfied here.

A number of Blue Water Baltimore's members would have standing to sue in their own right.  "In the environmental litigation context, the standing requirements are not onerous."  *Am. Canoe Ass'n, Inc. v. Murphy Farms, Inc.*, 326

---

[11] It is not clear that a plaintiff-intervenor must have standing in order to be able to intervene.  *See United States v. Arch Coal, Inc.*, No. 11-0133, 2011 U.S. Dist. LEXIS 66789, at *19 n.4 (S.D. W. Va. June 22, 2011) (discussing a split of authority on this question and noting that this Court has not resolved the issue); *see also* Wright & Miller, *Federal Practice & Procedure* § 1908 (3d ed. 2013) ("[S]ome courts have ruled that, in addition to satisfying the requirements of Rule 24(a), the intervenor must have Article III standing.  Other courts have held that standing is not required.").  Assuming that Blue Water Baltimore is required to demonstrate standing, it has done so.  Should this Court reach the issue, Blue Water Baltimore submits that a plaintiff-intervenor need not demonstrate standing in order to intervene.

22

F.3d 505, 517 (4th Cir. 2003). "[E]nvironmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons 'for whom the aesthetic and recreational values of the area will be lessened' by the challenged activity." *Friends of the Earth*, 528 U.S. at 183 (quoting *Sierra Club v. Morton*, 405 U.S. 727, 735 (1972)).

Members of Blue Water Baltimore have been adversely impacted by unlawful sewage discharges from the City of Baltimore, as is set forth in the declarations of two Blue Water Baltimore members that were submitted to the District Court. *See* J.A. 140, 146. Gregory Skipper, a Blue Water Baltimore member, resides on the Baltimore Harbor waterfront and engages in a number of recreational activities which have been harmed by unlawful sewage discharges, including running, playing sports, and entertaining guests. J.A. 147-48, ¶¶ 11-19, 21. In addition, he avoids any recreational activity that would involve contact with the Harbor's water, due to unlawful sewage pollution. J.A. 148, ¶ 20. Bob Mayes, another Blue Water Baltimore member, resides near a tributary of the Herring Run waterway in Baltimore and has had a number of recreational activities harmed by unlawful sewage discharges into the Herring Run, including running, hiking, and bird watching. J.A. 140-43, ¶¶ 5, 10-20. He also avoids recreational activity that would involve contact with Herring Run's water and refrains from fishing there due to concerns regarding unlawful sewage pollution. J.A. 143-44, ¶¶ 21, 23.

23

Both members plan to continue to engage in their respective recreational activities, but will continue to suffer decreased enjoyment and will avoid areas they would otherwise visit so long as unlawful sewage discharges continue into the Herring Run and the Harbor.  J.A. 148, ¶ 19; J.A. 143, ¶ 22.  Both are also concerned about the environmental and public health risks created by unlawful sewage discharges. J.A. 147, ¶ 11; J.A. 141 ¶ 10.

The facts outlined in these declarations are analogous to circumstances where this Court has found standing.  *See Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 629 F.3d 387, 397 (4th Cir. 2011) (decrease in the number of trips taken by a kayaker on water body due to "reasonable concern that runoff from [defendant's] facility is polluting the waters in that area" is sufficient to confer standing); *Ohio Valley Envtl. Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 193 n.10 (4th Cir. 2009) (holding that where an individual travels to a potential "mine site to take photographs of nature and she intends to do so regularly in the future," standing is established with respect to a permit application at that mine site).

As to the second requirement, an interest in the proper enforcement of a consent decree governing sewage discharge is germane to Blue Water Baltimore's purpose.  J.A. 137, ¶¶ 11-12.  Blue Water Baltimore's mission is to "restore the quality of Baltimore's rivers, streams and harbor to foster a healthy environment, a

24

strong economy, and thriving communities," and preventing unlawful sewage discharges is a part of that mission.  J.A. 136, ¶ 5.  Indeed, Blue Water Baltimore has a specific campaign focused on addressing sewage pollution and has been involved in sewage issues relating to the City of Baltimore for years.  J.A. 137, ¶ 12. Accordingly, the second requirement for associational standing is satisfied.

Finally, the third requirement – that neither the claim asserted nor the relief requested require participation of the individual members – is also met here. Nothing about the nature of Blue Water Baltimore's claim asserted in its Complaint in Intervention nor the relief requested requires participation of its individual members, nor would a grant of relief impact its individual members in such a way as to require their participation in the suit.  Rather, this is a quintessential type of suit brought by environmental organizations that does not require direct participation of any individual members.

Accordingly, to the extent that Blue Water Baltimore is required to demonstrate standing, it has done so here.

## CONCLUSION

For the reasons set forth above, Blue Water Baltimore submits that the judgment of the District Court should be reversed and the case remanded with instructions for the District Court to grant Blue Water Baltimore's motion to intervene.

## **REQUEST FOR ORAL ARGUMENT**

Pursuant to Federal Rule of Appellate Procedure 34(a)(1),

Intervenor/Plaintiff-Appellant Blue Water Baltimore requests that the Court

schedule oral argument.  This case presents novel and important issues regarding

intervention under the Clean Water Act where a Consent Decree is in place, and

oral argument would significantly aid the decisional process.


Respectfully Submitted,


 s/ Theodore L. Garrett
Theodore L. Garrett
Thomas R. Brugato
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 662-5398
tgarrett@cov.com

*Counsel for Intervenor/Plaintiff-Appellant Blue Water Baltimore*

February 24, 2014

## ADDENDUM OF RELEVANT STATUTORY PROVISIONS

**Clean Water Act, 33 U.S.C. § 1365**

**Citizen Suits**

**(a) Authorization; jurisdiction**

Except as provided in subsection (b) of this section and section 1319(g)(6) of this title, any citizen may commence a civil action on his own behalf—

(1) against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation, or

(2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator.

The district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce such an effluent standard or limitation, or such an order, or to order the Administrator to perform such act or duty, as the case may be, and to apply any appropriate civil penalties under section 1319(d) of this title.

**(b) Notice**

No action may be commenced—

(1) under subsection (a)(1) of this section—

(A) prior to sixty days after the plaintiff has given notice of the alleged violation (i) to the Administrator, (ii) to the State in which the alleged violation occurs, and (iii) to any alleged violator of the standard, limitation, or order, or

(B) if the Administrator or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a

State to require compliance with the standard, limitation, or order, but in any such action in a court of the United States any citizen may intervene as a matter of right.

(2) under subsection (a)(2) of this section prior to sixty days after the plaintiff has given notice of such action to the Administrator,

except that such action may be brought immediately after such notification in the case of an action under this section respecting a violation of sections 1316 and 1317(a) of this title. Notice under this subsection shall be given in such manner as the Administrator shall prescribe by regulation.

**(c) Venue; intervention by Administrator; United States interests protected**

(1) Any action respecting a violation by a discharge source of an effluent standard or limitation or an order respecting such standard or limitation may be brought under this section only in the judicial district in which such source is located.

(2) In such action under this section, the Administrator, if not a party, may intervene as a matter of right.

(3) PROTECTION OF INTERESTS OF UNITED STATES.—Whenever any action is brought under this section in a court of the United States, the plaintiff shall serve a copy of the complaint on the Attorney General and the Administrator. No consent judgment shall be entered in an action in which the United States is not a party prior to 45 days following the receipt of a copy of the proposed consent judgment by the Attorney General and the Administrator.

**(d) Litigation costs**

The court, in issuing any final order in any action brought pursuant to this section, may award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such award is appropriate. The court may, if a temporary restraining order or preliminary injunction is sought, require the filing of a bond or equivalent security in accordance with the Federal Rules of Civil Procedure.

**(e) Statutory or common law rights not restricted**

Nothing in this section shall restrict any right which any person (or class of persons) may have under any statute or common law to seek enforcement of any effluent standard or limitation or to seek any other relief (including relief against the Administrator or a State agency).

**(f) Effluent standard or limitation**

For purposes of this section, the term "effluent standard or limitation under this chapter" means (1) effective July 1, 1973, an unlawful act under subsection (a) of section 1311 of this title; (2) an effluent limitation or other limitation under section 1311 or 1312 of this title; (3) standard of performance under section 1316 of this title; (4) prohibition, effluent standard or pretreatment standards under section 1317 of this title; (5) certification under section 1341 of this title; (6) a permit or condition thereof issued under section 1342 of this title, which is in effect under this chapter (including a requirement applicable by reason of section 1323 of this title); or (7) a regulation under section 1345(d) of this title,.

**(g) "Citizen" defined**

For the purposes of this section the term "citizen" means a person or persons having an interest which is or may be adversely affected.

**(h) Civil action by State Governors**

A Governor of a State may commence a civil action under subsection (a) of this section, without regard to the limitations of subsection (b) of this section, against the Administrator where there is alleged a failure of the Administrator to enforce an effluent standard or limitation under this chapter the violation of which is occurring in another State and is causing an adverse effect on the public health or welfare in his State, or is causing a violation of any water quality requirement in his State.

## **Federal Rule of Civil Procedure 24.  Intervention**

(a) INTERVENTION OF RIGHT. On timely motion, the court must permit anyone to intervene who:

(1) is given an unconditional right to intervene by a federal statute; or

(2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

(b) PERMISSIVE INTERVENTION.

(1) *In General.* On timely motion, the court may permit anyone to intervene who:

(A) is given a conditional right to intervene by a federal statute; or

(B) has a claim or defense that shares with the main action a common question of law or fact.

(2) *By a Government Officer or Agency.* On timely motion, the court may permit a federal or state governmental officer or agency to intervene if a party's claim or defense is based on:

(A) a statute or executive order administered by the officer or agency; or

(B) any regulation, order, requirement, or agreement issued or made under the statute or executive order.

(3) *Delay or Prejudice.* In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

(c) NOTICE AND PLEADING REQUIRED. A motion to intervene must be served on the parties as provided in Rule 5. The motion must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought.

## <u>CERTIFICATE OF COMPLIANCE</u>

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,390 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman.

Dated: February 24, 2014           _s/ Thomas R. Brugato_____
                                 Thomas R. Brugato
                                 COVINGTON & BURLING LLP
                                 1201 Pennsylvania Avenue, N.W.
                                 Washington, D.C. 20004
                                 (202) 662-5515
                                 tbrugato@cov.com

# <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this February 24, 2014, I caused 8 true and correct copies of the Brief of Intervenor/Plaintiff-Appellant Blue Water Baltimore, and 6 copies of the Joint Appendix, to be sent via Federal Express to the following:

> Clerk, United States Court of Appeals
> for the Fourth Circuit
> 1100 East Main Street, Suite 501
> Richmond, Virginia 23219-3517

I further certify that on February 24, 2014, I electronically filed the Brief of Intervenor/Plaintiff-Appellant and the Joint Appendix using this Court's CM/ECF system, which will serve those documents on the following individuals:

**On Behalf of the United States**

Emily A. Polachek
U.S. Department of Justice
P.O. Box 7415
Washington, D.C. 20044
Tel.: (202) 514-5442
Fax: (202) 616-6583
Email: emily.polachek@usdoj.gov

**On Behalf of the State of Maryland**

Nancy W. Young
Maryland Office of the Attorney General
1800 Washington Boulevard
Baltimore, MD 21230
Tel.: (410) 537-3042
Fax: (410) 537-3943
Email: nancy.young@maryland.gov

**On Behalf of the Mayor and City Council of Baltimore, Maryland**

Thomas M. Lingan
Venable LLP
750 E. Pratt Street, Suite 900
Baltimore, MD 21202
Tel.: (410) 244-7400
Fax: (410) 244-7742
Email: tmlingan@venable.com

Peter E. Keith
Gallagher Evelius and Jones LLP
218 N. Charles St. Ste. 400
Baltimore, MD 21201
Tel.: (410) 727-7702
Fax: (410) 468-2786
Email: pkeith@gejlaw.com

Dated: February 24, 2014                    s/ Thomas R. Brugato
                                            Thomas R. Brugato
                                            COVINGTON & BURLING LLP
                                            1201 Pennsylvania Avenue, N.W.
                                            Washington, D.C. 20004
                                            (202) 662-5515
                                            tbrugato@cov.com

2